

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-1997

# Frey v. Fulcomer

Precedential or Non-Precedential:

Docket 95-9007

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Frey v. Fulcomer" (1997). *1997 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 95-9007

RODERICK HERMAN FREY
Appellant

v.

THOMAS A. FULCOMER, Warden,
State Correctional Institution at Huntingdon

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 89-cv-04248)

Argued: December 17, 1996

Before: BECKER, ROTH, and McKEE, Circuit Judges.

(Filed December 30, 1997)

ROBERT B. DUNHAM, ESQUIRE
 (ARGUED)
Center for Legal Education
Advocacy & Defense Assistance
437 Chestnut Street
Suite 501
Philadelphia, PA 19106

LOUIS M. NATALI, JR., ESQUIRE
 (ARGUED)
Temple University Law School
1719 North Broad Street
Philadelphia, PA 19122

PENN B. GLAZIER, ESQUIRE
625 West Chestnut Street
P.O. Box 1387
Lancaster, PA 17608-1387

Attorneys for Appellant

JOSEPH C. MADENSPACHER,
 ESQUIRE
District Attorney
JOHN A. KENNEFF, ESQUIRE
 (ARGUED)
First Assistant District Attorney
Office of the District Attorney
50 North Duke Street
Lancaster County Courthouse
Lancaster, PA 17602

Attorneys for Appellee

OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by Roderick Frey, who was convicted by a Pennsylvania state court jury of murder in thefirst degree and was sentenced to death, from a final order of the district court denying his petition for a writ of habeas corpus. Frey's appeal requires us to consider whether the jury charge at the penalty phase of his trial violated the

Eighth Amendment as construed in Mills v. Maryland, 486 U.S. 367 (1988) and McKoy v. North Carolina, 494 U.S. 433 (1990). These cases hold that a death sentence should be vacated if the jury, upon receiving the judge's instructions, may have thought that it could only consider those mitigating factors which it unanimously found to exist. Because we conclude that the charge was reasonably likely to have had that effect, we will reverse the order of the district court and direct it to grant a conditional writ of habeas corpus permitting Pennsylvania to conduct a new sentencing proceeding or to sentence Frey to life imprisonment.

I. Facts and Procedural History

The following are the basic background facts. A fuller factual history is set forth in our opinion on Frey's previous appeal on different issues, see Frey v. Fulcomer, 974 F.2d 348, 351–56 (3d Cir. 1992) ("Frey I").

Roderick and Barbara Frey were married in 1956. By 1979, they were experiencing difficulty in their marriage and spoke of divorce. Financial difficulties and the death of their son in an automobile accident two years earlier had contributed to their marital discord. Frey apparently also had engaged in extramarital affairs. Frey worked as a truck driver for the Turkey Hill dairy chain. His job brought him into contact with Charles Zehring, the manager of a Turkey Hill convenience store, whom the Pennsylvania Supreme Court later described as suffering from mental illnesses, including paranoid schizophrenia. See Commonwealth v. Frey, 475 A.2d 700, 702 (1984). By mid–1979, Frey had begun discussing with Zehring his marital difficulties, as well as his concerns about the financial strain that would be caused by a divorce. Zehring suggested as a solution that Frey arrange to have Mrs. Frey killed in a manner that made her death appear accidental.

In October 1979, Barbara Frey sued Frey for divorce, and he moved out of their home. Around the same time, Frey and Zehring finalized an arrangement whereby Frey agreed to pay Zehring five thousand dollars to kill his wife. Frey financed the deal by borrowing the money from Barbara against their expected property settlement.

3

On November 8, 1979, Frey arranged to meet Barbara early in the morning at the Turkey Hill convenience store where she worked. Frey then passed along information to Zehring about her schedule and likely route to the store. In the meantime, Zehring, in exchange for five hundred dollars, enlisted the assistance of Richard Heberlig. Though Heberlig was initially led to believe that he would only be assaulting the intended victim, he became aware, on the morning of November 8, that murder was in fact planned.

Zehring and Heberlig set out at four a.m. on November 8 to locate and kill Barbara Frey. Posing as police officers, they pulled her car over to the side of the road and approached her. Their plan at that point was to beat Mrs. Frey into unconsciousness and then stage an auto accident as their cover. When she did not lose consciousness, Heberlig panicked and shot her in the chest. After the shooting, they moved Mrs. Frey's car to a nearbyfield where they failed in an attempt to set the car onfire. Frey subsequently paid Zehring the balance of the money he owed for the contract killing.

Barbara Frey's body was discovered by a passerby later that morning. On December 6, 1979, Frey confessed to the murder. Zehring and Heberlig were subsequently arrested, and all three men were charged with murder and conspiracy. Zehring and Heberlig pled guilty and received sentences of life imprisonment.

Despite an earlier confession, which he later recanted, Frey opted to stand trial before a jury. The defense called as a witness a psychologist who testified to Frey's low-to-normal IQ, his basically submissive personality, his minimal tendency to defend himself, and his risk averse nature. The defense proceeded to argue that Zehring had threatened Frey, and that Frey had paid Zehring the five thousand dollars as extortion money in an effort to protect his family. The jury was apparently unconvinced by the story, for it found Frey guilty of murder in thefirst degree.

A sentencing hearing followed immediately. After counsel for both Frey and the Commonwealth had presented their arguments, the court instructed the jurors on how they were to assess the evidence before them in order to decide

4

whether Frey was to be sentenced to life imprisonment or to death. Part of that deliberative process involved consideration of the aggravating and mitigating circumstances in Frey's case, and the state trial judge gave the following instruction:

> [T]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

App. at 286.

The judge then told the jury that there was only one relevant aggravating circumstance (contract murder) but that there were six possible mitigating circumstances: Frey's lack of prior convictions; the influence of mental disturbance; impairment of the ability to appreciate the criminality of the act; youth or advanced age; duress or substantial domination by another person; and any other circumstances that they, as jurors, would consider relevant. Finally, the judge instructed the jury that the Commonwealth must prove aggravating circumstances beyond a reasonable doubt, but that the defense need only prove mitigating circumstances by a preponderance of the evidence.

On May 15, 1989, after five and one-half hours of deliberation, the jury returned a sentence of death. Following his sentencing, Frey retained new counsel and appealed his conviction and sentence to the Pennsylvania Supreme Court, which affirmed. See Commonwealth v. Frey, 475 A.2d 700 (1984). In that appeal Frey raised several arguments, including a claim that his sentence was disproportionate relative to the life sentences given to his accomplices. The Pennsylvania Supreme Court held that the cases of Zehring and Heberlig were not "similar" for purposes of the proportionality review required by 42 Pa. Cons. Stat. Ann. S 9711(h)(3)(iii) (Purdon 1982).

In July 1984, Frey petitioned for relief under Pennsylvania's Post Conviction Hearing Act, 42 Pa. Cons.

5

Stat. Ann. S 9543(3)(xiii) (Purdon 1982) alleging exculpatory after-discovered evidence -- statements made by Zehring while in prison evidencing Zehring's domination of Frey. The Court of Common Pleas denied Frey's motion, and the Pennsylvania Supreme Court affirmed. See Commonwealth v. Frey, 517 A.2d 1265 (1986). The Supreme Court held that Frey could have elicited this evidence during the guilt phase of the trial, and, at all events, that a different verdict was unlikely.

Frey again petitioned under Pennsylvania's Post Conviction Hearing Act on various other theories, including ineffective assistance of counsel. Both the Court of Common Pleas and the Pennsylvania Supreme Court rejected Frey's claims, holding, inter alia, that Frey had suffered no prejudice from his counsel's failure to accurately state the law regarding mitigating circumstances to the jury at sentencing. See Commonwealth v. Frey, 554 A.2d 27 (1989). In this petition Frey also contended that the jury charge at the penalty phase of his trial violated Mills. This argument was also rejected. See 554 A.2d at 30-31.

His state court remedies exhausted, Frey then turned to federal court. In March 1991, he filed a petition for a writ of habeas corpus, 28 U.S.C. S 2254 (1988), in the District Court for the Eastern District of Pennsylvania. Although the district court denied the petition with respect to all guilt phase issues, it found that Frey had received ineffective assistance of counsel at the penalty phase and was prejudiced thereby, and that the court had improperly admitted certain testimony at that stage of the proceedings as well.1 Accordingly, the district court granted Frey a writ of habeas corpus, without prejudice to the Commonwealth's right to resentence Frey to life imprisonment, or alternatively, to conduct further proceedings.

_____

1. The testimony at issue involved Sharon Bowers, an acquaintance of Frey's. Although not appearing at the guilt phase of the trial, Bowers testified at the sentencing phase that Frey complained often of his problems with Mrs. Frey, and that on one occasion in May or June of 1979 Frey told Bowers that "I would kill the son of a bitch [sic] if I knew I could get away with it."

6

The Commonwealth appealed to this court, and on July 10, 1991, we vacated the district court's grant of habeas corpus relief. See Frey I. We held that although performance of defendant's trial counsel was deficient at the penalty stage, habeas relief was not appropriate under the test of Strickland v. Washington, 466 U.S. 668 (1984), since it was not reasonably probable that the jury would have sentenced Frey to life imprisonment rather than death had Frey been afforded effective assistance of counsel.[2] We also held that Frey was not denied due process by the admission of the Bowers' testimony. We remanded the matter for further reconsideration of other issues raised by Frey's habeas petition. In October 1995, after an additional hearing and supplemental briefing, the district court denied the petition.

Frey now appeals the order of the district court denying his petition for habeas corpus relief, raising a host of legal issues. However, as noted in the margin, only the question whether the jury charge at the penalty phase impermissibly required the jury to unanimously find the existence of mitigating circumstances in violation of the Eighth Amendment warrants extended discussion.[3]  Our review of this legal issue is plenary. See Frey I, 974 F.2d at 356.

_____

2. As part of his alleged deficient performance at the penalty phase, Frey's counsel had based his arguments to the jury on a Pennsylvania death penalty statute that had been held unconstitutional three years earlier, largely because the statute improperly restricted the defendant's ability to argue mitigating circumstances to the jury. See Frey I, 974 F.2d at 350. We found that this was not prejudicial error in part because the trial judge properly instructed the jury as to which aggravating and mitigating factors to consider, as well as how the jury should balance those factors. See id. at 351. Although we stated at that time that the court "carefully" instructed the jury, and that the judge read "proper instructions" on how to weigh the aggravating and mitigating factors, the question whether the jury charge itself violated Mills-McKoy was not before us at that time and thus those earlier remarks are not controlling here.

3. Frey advances four other bases for relief. First, he once again raises an ineffective assistance of counsel claim. We considered this claim in Frey I, and determined that Frey was not prejudiced by the failings of his attorney. See supra note 2. But Frey now argues that O'Neal v.

7

II. The Jury Charge

Frey challenges his sentence on the ground that the jury
charge at the penalty phase of his trial violated the Eighth

_____

McAninch, ___ U.S. ___, 115 S.Ct. 992 (1995) creates a new standard for
review of ineffective assistance of counsel claims and thus requires this
court to reconsider the matter. We find this contention without merit
and decline to reconsider Frey's ineffective assistance of counsel claim.
In brief, O'Neal does not change the standard applicable to these types
of claims; instead, it only requires that when a court is in "grave doubt"
about the likely effect of an error on a jury's verdict, that court should
not treat that error as harmless. See id. at 994; see also Yohn v. Love,
76 F.3d 508, 522 (3d Cir. 1996)(construing O'Neal). Even assuming that
this case would trigger an O'Neal analysis, this court did not indicate at
any point in its prior opinion that it was in grave doubt about Frey's
claim. Indeed, in Frey I we stated that counsel's "shortcomings, though
highly unfortunate, have not undermined [our] confidence in the
outcome." 974 F.2d at 369 (internal quotations omitted). O'Neal would
not command a different result.

Second, Frey argues that the state trial court erred when it failed to
instruct the jury that the defendant's age could be considered as a
mitigating circumstance, in violation of both 42 Pa. Cons. Stat.
S 9711(e)(4) (Purdon 1982), which provides that age can be a mitigating
circumstance, and the Eighth Amendment. We find this argument to
lack merit, and agree with the Pennsylvania Supreme Court which stated
that, whereas youth and old age could be considered a mitigating
circumstance, middle age -- Frey was 42 at the time he committed the
crime -- could not. At all events, we note that the jury instructions
clearly indicated to the jurors that they could consider any
circumstances that they felt were relevant as mitigating evidence.

Third, Frey raises a claim regarding the alleged after acquired
evidence. He submits that statements made by Zehring after Frey's
sentencing was complete constitute after acquired evidence and thus
merit a new sentencing hearing. Because we conclude that Frey's death
sentence must be vacated and remand the matter for further
proceedings, we need not reach this issue. Frey will have the opportunity
to offer Zehring's statements as evidence. Should a question of
admissibility arise in connection with these statements, that
determination will be properly made by the trial court in the first
instance.

Finally, Frey challenges the constitutionality of Pennsylvania's
proportionality review under the 14th Amendment. For the same reason,
we do not reach the merits of this issue. See infra at note 7.

Amendment as construed by the Supreme Court in Mills v.
Maryland, 486 U.S. 367 (1988) and McKoy v. North
Carolina, 494 U.S. 433 (1990). More specifically, Frey
contends that the charge impermissibly led members of the
jury to believe that a particular mitigating circumstance
could not be considered unless there was unanimous
agreement regarding proof of that circumstance.

The Commonwealth counters that there is "no likelihood
that a reasonable juror could have concluded that they
were prohibited from considering the mitigating evidence
that they found to exist and that was supported by proof of
a preponderance of the evidence," and thus, the
Commonwealth argues, the trial court's charge did not
suffer from the deficiencies animating Mills and McKoy. In
addition, the Commonwealth contends that we considered
the same issue in Zettlemoyer v. Fulcomer, 923 F.2d 284
(3d Cir. 1991), and that our approval of the jury charge in
that case should control our decision here.4

_____

4. We note at the outset that Frey's Mills challenge might be subject to
the bar on retroactive application of new legal rules to cases on
collateral
review announced in Teague v. Lane, 489 U.S. 288 (1989)(plurality
opinion). Under Teague, a case that announces a new legal rule after the
defendant's conviction became final should not be applied retroactively
unless the rule falls within one of Teague's narrow exceptions. See also
Sawyer v. Smith, 497 U.S. 227 (1990). Whether Teague would bar
retroactive application of Mills is a close and difficult question upon
which the circuits are split. Compare Williams v. Dixon, 961 F.2d 448,
459 (4th Cir. 1992)(holding that Mills survives Teague bar), with Miller
v.
Lockhart, 65 F.3d 676, 685–86 (8th Cir. 1995)(holding that Mills
challenge is subject to Teague bar), and Nethery v. Collins, 993 F.2d
1154, 1162 (5th Cir. 1993)(same). We have not previously taken a
definitive position on this debate. In Zettlemoyer we were confronted with
this precise issue; although we decided to reach the merits of the Mills
claim in that case, we did not expressly hold whether Mills falls outside
the Teague bar. See 923 F.2d at 306 n.19. We also note that the district
court for the District of Delaware, in a brief but thoughtful opinion, has
concluded that Mills does not announce a"new rule" for Teague
purposes. See DeShields v. Snyder, 829 F. Supp. 676, 687–88 (D. Del.
1993) (Farnan, J.).

At all events, we do not reach this issue here, as the Commonwealth
has failed to raise it in its brief, and thus we deem the issue waived.
See
Williams, 961 F.2d at 459 (finding waiver). We therefore proceed to the
merits.

A. The Mills–McKoy–Boyde Standard

Under the Supreme Court's current construction of the
Eighth Amendment, the sentencer in a death penalty case
must be permitted to consider all relevant mitigating
evidence that the defendant proffers as counseling less
than a sentence of death. Eddings v. Oklahoma, 455 U.S.
104 (1982); Lockett v. Ohio, 438 U.S. 586 (1978).
Accordingly, it is well established that the sentencer cannot
be precluded from considering any such evidence. Skipper
v. South Carolina, 476 U.S. 1 (1986); Eddings, 455 U.S. at
114. The source of this preclusion is irrelevant; whether its
source is statutory (Lockett), the sentencing court (Eddings),
or an evidentiary ruling (Skipper), the result is the same.

In Mills, the Supreme Court relied on these precedents to
conclude that a death sentence should be vacated if there
is a substantial probability that reasonable jurors, upon
receiving the judge's instructions and attempting to
complete the verdict form based on those instructions, may
have thought that they could only consider those mitigating
factors which they unanimously found to exist. Put
differently, if the jurors were led to believe that they
could not each individually consider certain mitigating
circumstances because there was not unanimous
agreement as to the existence of those circumstances, then
"some jurors were prevented from considering factors which
may call for a less severe penalty, and petitioner's sentence
cannot stand." Id. at 376 (internal citations omitted). See
also Zettlemoyer v. Fulcomer, 923 F.2d 284, 306–07 (1991)
(discussing Mills).

The "intuitively disturbing" hypothetical scenario which
Mills precludes is the following: All 12 jurors agree that
some mitigating circumstances are present, and that those
mitigating circumstances outweigh any aggravating
circumstances. But since the jury cannot unanimously
agree that the same mitigating circumstances are present,
they would not be permitted to engage in any deliberation
on the appropriateness of death versus life imprisonment.
See Mills, 486 U.S. at 374. Moreover, since Eighth
Amendment jurisprudence requires that each sentencer be
permitted to consider all mitigating circumstances, the Mills
Court did not require proof of actual confusion. The Court

10

reasoned that "[t]he possibility that a single juror could block such consideration [of a mitigating circumstance], and consequently require the jury to impose the death penalty, is one we dare not risk." Id. at 384. Thus, the Court required proof of only a substantial probability of confusion on this element of the charge.

Two years later, the Court reaffirmed the importance of Mills in McKoy v. North Carolina, 494 U.S. 433 (1990). In McKoy, the trial court similarly instructed the jury that it must unanimously find the existence of any mitigating circumstances in order to weigh those circumstances in the sentencing determination. Attempting to distinguish itself from the Maryland statute at issue in Mills, North Carolina argued that its death penalty sentencing scheme allowed the jury to recommend life imprisonment even if had found no mitigating circumstances. Id. at 438. The Court determined that this distinction did not cure the constitutional defect. Id. at 439. In sum, the essential holding of Mills–McKoy is simply that one juror cannot prevent the others from giving effect to mitigating evidence, regardless of whether the imposition of a life sentence depends on the existence of such evidence. See id. at 440.

Finally, in 1990, the Court clarified the legal standard for the review of jury instructions when the claim is that the instruction is ambiguous and open to an erroneous interpretation (as was the case in Mills). In Boyde v. California, 494 U.S. 370, 380 (1990), the Court held that the proper standard in these cases is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." We note that the difference between the standard of review originally outlined in Mills and the standard ultimately adopted in Boyde is not purely semantic. Under the Mills "substantial probability" standard our focus was directed to how a single hypothetical juror might have reacted to the erroneous instruction. Under the Boyde standard, we are told by the Court, our focus should be on the reasonable likelihood that the entire jury applied the instruction in an improper manner. See Boyde, 494 U.S. at 380. Thus, while our inquiry is directed toward whether the Frey instruction

11

suffers from the same type of defect discussed in Mills (i.e. that the instruction could be read to require a unanimous finding of mitigating circumstances), our standard is that of Boyde, not Mills. See Zettlemoyer, 923 F.2d at 307.

B. The Zettlemoyer Charge

We have had occasion to apply the Mills-McKoy-Boyde analysis to a similar case. In Zettlemoyer, supra, we considered the propriety of the following instruction (which we set forth at length for purposes of comparison):

> Again, if you find unanimously, beyond a reasonable doubt, the aggravating circumstance that I have mentioned, . . . that is an aggravating circumstance.
>
> . . .
>
> [Y]ou are obligated by your oath of office to fix the penalty at death if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances.

923 F.2d at 307-08. We found that this instruction was not faulty under Mills. See id. at 308. We placed emphasis on the "if you unanimously agree and find" language reproduced above, and reasoned that it meant "only that the jury's ultimate conclusion must be unanimous, not that each interim step in its deliberations be unanimous." Id.

In other words, we found that the word "unanimously" in the latter part of the jury charge only modified the word "agree" in the sense that the instruction was reasonably likely to have been understood by the jury to have meant something akin to: you must fix the penalty at death if you unanimously agree to the ultimate conclusion that either there is an aggravating circumstance and no mitigating circumstances or that the aggravating circumstance outweighs any mitigating circumstances. Accordingly, we concluded that the fact that the jury "must unanimously agree that the aggravating must outweigh the mitigating is not the same as unanimously agreeing that a mitigating factor exists." Id.

12

This interpretation of the court's "agree and find" language was further suggested by other statements earlier in the Zettlemoyer jury charge. For example, the trial court had previously instructed the jury that:

> If you find that aggravating circumstance and find no mitigating circumstances or if you find that the aggravating circumstance which I mentioned to you outweighs any mitigating circumstance you find, your verdict must be the death penalty. If, on the other hand, you find that the Commonwealth has not proven an aggravating circumstance beyond a reasonable doubt or if they have, that the mitigating circumstances outweight (sic) the aggravating circumstances, then you must bring in a verdict of life imprisonment.

This instruction basically repeats the information presented to the jury in the instruction discussed above. It is notable, however, that this instruction provides the jury with the same decision calculus without the use of the term "unanimously". Additionally, this instruction refers to aggravating circumstances outweighing "any mitigating circumstance you may find". Taken together, this language supports our conclusion that Zettlemoyer's later use of the term "unanimously" in the jury charge could not be said to support a reasonable likelihood that the jury believed it must unanimously agree on the existence of mitigating circumstances.

C. The Frey Charge

We turn to the jury instruction in the present case. The trial court charged:

> Members of the jury, you must now decide whether this defendant should be sentenced to death or life imprisonment. The sentence will depend upon your findings concerning aggravating and mitigating circumstances. The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating

13

circumstances. The verdict must be a sentence of life imprisonment in all other cases.

. . .

Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstances (sic) and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

App. at 286-89. Although similar in many respects to the charge at issue in Zettlemoyer, there is also a significant and distinguishing dissimilarity here.

As noted above, the determinative question for our purposes is what the jury could have understood the charge to mean, and whether it is reasonably likely that that understanding would have precluded the jurors' independent consideration of any mitigating circumstances. Specifically, we must determine whether it is reasonably likely that the jury could have understood the charge to require unanimity in consideration of mitigating evidence. We need not determine whether the jurors did, in fact, understand the charge to require unanimity in consideration of mitigating evidence -- only whether it was reasonably likely. See Boyde, 494 U.S. at 380; Mills, 486 U.S. at 384.

Examining the language of the jury charge, we must answer in the affirmative. First and foremost, read in its entirety, the relevant portion of the jury charge emphasizes the importance of a unanimous finding, using the phrase frequently and in close proximity to -- within seven words of -- the mitigating circumstances clause. We rescribe the relevant portion of the sentence: "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance. . . ." Considering this close proximity -- the clause is, to the ear and to the mind, one sound bite -- it is quite possible that a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously.

14

This conclusion is not inconsistent with our holding in Zettlemoyer (where the separation was by seventeen words, and not one sound bite). Moreover, as noted above, we found the Zettlemoyer instruction to require unanimity in the ultimate conclusion, and not in the interim findings leading to that conclusion. See Zettlemoyer, 923 F.2d at 308. This was because the Zettlemoyer trial court used the term "unanimously" to modify only the term "agree" in the subsequent phrase "agree and find". In the present case, the court did not instruct the jury to "fix the penalty at death if you unanimously agree and find...," but rather instructed them to so fix that sentence "if the jury unanimously finds" (emphasis added). Thus, the unanimity language in the Frey charge could only modify the term "find," and hence the jury could reasonably have believed that unanimity was required in both its ultimate and interim conclusions, especially given the close proximity we have described. This possibility, not present in Zettlemoyer, violates Mills.5

Other parts of the Frey charge were more likely to increase the confusion rather than lessen it. As in Zettlemoyer, the Frey trial court made a point of instructing the jury on the relevant burdens of proof relating to both aggravating and mitigating circumstances. The court stated:

_____

5. Moreover, at no point did the Frey state trial judge make a statement clarifying each juror's right to consider mitigating evidence absent the agreement of fellow jurors, a factor noted in Kubat v. Thieret, 867 F.2d 351, 373 (7th Cir. 1989) ("Kubat's jurors were never expressly informed in plain and simple language that if even one juror believed that the death penalty should not be imposed, Robert Kubat would not be sentenced to death."); see also Kordenbrock v. Scroggy, 919 F.2d 1091, 1110 (6th Cir. 1990) (en banc) ("Because the jurors in this case were told that aggravating factors had to be unanimous, but were not told exactly what role mitigating factors play, it would have been reasonable for them to assume that mitigating factors had to be found unanimously as well."). While the absence of such an express statement is not dispositive, for such absence was not discussed in Zettlemoyer (which post-dated both Kubat and Kordenbrock), we reference these cases to suggest one means by which the trial court could have clarified its instructions for the jury. The adoption by Pennsylvania of a uniform verdict slip, see infra at 17, supports this view.

> Now, the Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. . . . The defendant has the burden of proving mitigating circumstances but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. . . . All the evidence from both sides, including the evidence you heard earlier during the trial in chief, as to aggravating or mitigating circumstances, is important and appropriate for you to consider.

App. at 288. It is what is not said here that is significant. Unlike Zettlemoyer, where the court specifically instructed the jury that aggravating circumstances must be proven "unanimously, beyond a reasonable doubt," the trial court here did not stress that the different burdens that attach to aggravating and mitigating circumstances also entail different unanimity requirements. A lay jury might plausibly conclude, therefore, that aggravating and mitigating circumstances must be discussed and unanimously agreed to, as is typically the case when considering whether a burden of proof has been met. Such an understanding, however, is plainly inconsistent with the requirements of Mills, and adds to our concern that the jury could have understood the charge to require unanimity in consideration of mitigating evidence.

In sum, we find that, in light of the emphasis placed in this charge on unanimous findings, its close proximity to the "mitigating circumstance" language, and the manner in which this charge deviates from the Zettlemoyer charge, it was reasonably likely that the jury could have believed that it was required to find the existence of mitigating circumstances unanimously before those circumstances could be considered in its deliberations. For that reason, the charge violates Mills.

D. The Verdict Slip

The Commonwealth correctly notes in its brief that the verdict slip used in Zettlemoyer was substantially the same as the verdict slip used in the present case. We also recognize that the court's charge in this case tracked the language set forth in that verdict slip. However, as noted

16

above, the text of the charge in Zettlemoyer differed significantly from the one in the present case. Since Zettlemoyer considered the verdict form and the court's instructions as a whole in reaching its decision, see Zettlemoyer, 923 F.2d at 308 n.22, and since the charge here was significantly different, the discussion in Zettlemoyer regarding the propriety of the verdict slip is not controlling.

Moreover, as we noted in Zettlemoyer, subsequent to Frey's trial Pennsylvania adopted a uniform verdict slip for capital sentencing cases which expressly aims to eliminate the type of ambiguity at issue here. See Pa. R. Crim. P. 358A.6 While both Mills and Zettlemoyer expressed a hesitancy to "infer too much about the prior verdict form from the . . . well-meant efforts to remove ambiguity from the State's capital sentencing scheme," Mills also noted and inferred from such changes "at least some concern . . . that juries could misunderstand the previous instructions as to unanimity and the consideration of mitigating evidence by individual jurors." Mills, 486 U.S. at 382. Although joint consideration of the constitutionally permissible jury charge and the verdict form in Zettlemoyer led us to the conclusion

_____

6. The revised instruction provides, in part:

 B. The findings on which the sentence of death is based are (check one):

 __1. At least one aggravating circumstance and no mitigating circumstance.

  The aggravating circumstance(s) unanimously found (is)(are):

  . . .

 __2. One or more aggravating circumstances which outweigh(s) any mitigating circumstance(s).

  The aggravating circumstance(s) unanimously found (is)(are):

  . . .

  The mitigating circumstance(s) found by one or more of us (is)(are):

  . . . .

Pa. R. Crim. P. 358A (emphasis added).

17

that the amended form was not necessary to prevent a reasonable likelihood of jury error, such is not the case here. While we express no opinion on the constitutional necessity of any particular amendment to the verdict form, we do believe that the instruction and the verdict form in the present case taken as a whole are insufficient (and that use of the amended form may cure the defect).

E. Conclusion

Though we recognize that the interpretation offered by the Commonwealth is plausible, instructed by the teachings of Mills and its progeny that "[t]he possibility that a single juror could block such consideration [of a mitigating circumstance], and consequently require the jury to impose the death penalty, is one we dare not risk," id. at 384, we conclude that the charge in this case was ambiguous, reasonably likely to confuse the jury, and thus in error. Because we find that the jury could have understood the charge to preclude consideration of mitigating circumstances that were not agreed to by all twelve jurors, and because that creates a risk that the death penalty was imposed in spite of "factors which may call for a less severe penalty," we must direct vacatur of Frey's sentence. See id. at 376. We do so, however, without prejudice to Pennsylvania's right to sentence Frey to life imprisonment or to conduct a new sentencing hearing in a manner not inconsistent with this opinion.7

_____

7. As noted supra, Frey also contends that habeas corpus relief is appropriate on the grounds that the Pennsylvania Supreme Court's proportionality review was procedurally and substantively inadequate, and therefore in violation of Frey's due process rights. The Commonwealth rejoins that the proportionality review statute, 42 Pa. Cons. Stat. Ann. S 9711(h)(3)(iii), does not create any cognizable liberty interest, and therefore cannot ground a due process claim. On this point it relies on Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979), and its progeny. In general, the Greenholtz line of decisions stands for the proposition that state-created liberty interests will be found when the state (1) establishes substantive predicates to guide official decisionmaking, and (2) uses explicit mandatory language in its regulations directing the decisionmaker to reach a particular outcome if the substantive predicates are present. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 461–63

18

The order of the district court will be reversed with instructions to grant the writ of habeas corpus conditionally, with the proviso that Pennsylvania shall, within 120 days, conduct a new sentencing hearing in a manner not inconsistent with this opinion, or sentence Frey to life imprisonment.

_____

(1989). The Commonwealth maintains that the proportionality review mandated by the Pennsylvania Supreme Court does not meet this standard.

We note, however, that it is uncertain whether the United States Supreme Court would follow this approach, or indeed, how it would rule on this issue. Accord Ellis v. District of Columbia, 84 F.3d 1413, 1417 (D.C. Cir. 1996) (noting uncertainty regarding Supreme Court doctrine on state-created liberty interests). This is because the recent decision in Sandin v. Conner, -- U.S. --, 115 S.Ct. 2293 (1995), while not overruling any prior cases, see id. at 2300 n.5, sharply criticizes and effectively abandons the Court's prior methodology (as articulated in cases such as Greenholtz) for determining the existence of a statutory liberty interest in the prisoner's rights context. See Ellis, 84 F.3d at 1417-18. Sandin holds that state-created liberty interests will be limited to "freedom from restraint which . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S.Ct. at 2300. While this is undoubtedly a departure from Greenholtz, Thompson, et al., it is unclear exactly how radical a shift the Court intended to spur. See Sandin, 115 S.Ct. at 2306 (Breyer, J., dissenting). And it is still uncertain how broadly this circuit and others will construe Sandin's reasoning.

It seems apparent that Sandin was concerned quite specifically with the problem of prison administration and the interest of the states in the effective control of inmates. Those interests are not at issue here, and so it may be that Sandin's new approach will not apply. See Ellis, 84 F.3d at 1418. Indeed, even the Greenholtz-Thompson line of cases did not directly deal with the type of liberty interest alleged here, and it may be that both Sandin and Greenholtz will prove to be imperfect analogies. At all events, this close and difficult legal problem was not adequately briefed before us, and, since we will vacate Frey's sentence and permit Pennsylvania to conduct a new hearing, and potentially a new proportionality review, we need not reach this issue at this time.

A True Copy:
Teste:

　　　Clerk of the United States Court of Appeals
　　　for the Third Circuit

20