726 A.2d 333

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Charles Eugene CROSS, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 9, 1998.

Decided Feb. 25, 1999.

Reargument Denied April 22, 1999.

604

Paul H. Titus, Thomas M. Hardiman, Pittsburgh, Robert B. Dunham, Philadelphia, for C. Cross.

Ahmed Aziz, Beaver, Robert A. Graci, Harrisburg, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

In 1982 Cross was convicted by a jury of three counts of first degree murder and was sentenced to death. This court affirmed the judgment of sentence. 508 Pa. 322, 496 A.2d 1144 (Pa.1985).

In 1991, Cross filed a petition for post-conviction relief in the Court of Common Pleas of Beaver County. His petition was dismissed on June 1, 1992. This court affirmed. 535 Pa. 38, 634 A.2d 173 (1993).

Next, Cross filed a petition for habeas corpus in the federal system. On May 13, 1997, the district court denied the petition, but entered a certificate of appealability. This appeal is pending in the United States Court of Appeals for the Third Circuit.

While this appeal was pending, on January 15, 1997, Cross filed yet another post-conviction proceeding before the Pennsylvania courts. On January 16, 1997, the court of common pleas denied the petition, amended its order, and finally denied the petition on March 6, 1997. Now, nearly seventeen years after his conviction for three first degree murders, Cross appeals this denial of his PCRA claims.

Cross's primary claim is that the PCRA court failed to consider the facts presented in the PCRA petition before deciding whether post-conviction relief was required. The facts which the PCRA court allegedly failed to consider were that the psychiatrist, Dr. Melnick, who testified for the Commonwealth at trial in February of 1982, recanted his testimony thirteen years later, after reviewing documents supplied to

him by Cross's attorneys. These documents were a transcript of the doctor's trial testimony; a copy of the full report of Dr. Thomas Eberle, who testified for Cross at trial;[1] a copy of the report of Dr. Ralph Tarter, who examined Cross ten years after the crime and whose testimony was excluded at the first PCRA hearing; the affidavit of Edward L. Stewart, a private investigator employed by defense counsel who interviewed members of Cross's family; and the amended petition for a writ of habeas corpus. On the basis of reviewing these documents, Dr. Melnick recanted his trial testimony and stated (1) he needed two hours instead of the one hour he spent to evaluate Cross, (2) if he had reviewed all of the information in the documents listed above relative to Cross's family background and (3) if he had reviewed the complete results of tests "similar to those done by Dr. Tarter," he would not have testified that Cross was free of psychopathology:

Instead, I would have concluded that Mr. Cross is a disturbed man who had been the object of mistreatment that had adversely influenced his capacity to modulate (i) his own aggressive impulses and (ii) his ability to identify compassionately with the objects of his anger. Furthermore, I would have concluded that the structure of Mr. Cross' personality was impaired to such an extent that his ability to think rationally when confronted with intense emotions was diminished.

In light of the foregoing, I also would have testified that Mr. Cross was under the influence of extreme mental or emotional disturbance at the time the crimes were committed. Finally, I would have testified that his capacity to appreciate the criminality of his conduct or to conform to [sic] his conduct to the requirements of law was substantially impaired.

Affidavit of Melvin Melnick, November 9, 1998. In sum, although Dr. Melnick testified at trial that Cross had a

---

1. Dr. Melnick was present in court for the testimony of Dr. Eberle, and he had reviewed Dr. Eberle's written report before his own testimony, except for the first eleven pages, which were not available at the time he was given the report.

personality disorder, but was not psychotic, thirteen years later, he changed his opinion of Cross's mental state at the time of the crime. N.T. Jan 19, 1983, 794.

Before considering the merits of this PCRA claim, we must first determine whether it has been timely filed. As a matter of jurisdiction, a PCRA petition must be filed within one year of final judgment:

§ 9545. **Jurisdiction and proceedings** ...

(b) Time for filing petition.

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final. . . .

\* \* \* \* \* \*

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review ... or at the expiration of time for seeking the review.

Act of November 17, 1995, Special Session No. 1, P.L. 1118, No. 32, effective in 60 days, 42 Pa.C.S. § 9545. The conclusion of direct review was August 14, 1985, when this court affirmed the judgment of sentence. Cross's first post-conviction petition was filed on March 27, 1991, roughly five years beyond the one year limit of § 9545. His second petition for post conviction relief was filed on January 15, 1997, approximately ten years beyond the one year limit. This analysis does not end the matter, however, for the PCRA has a special provision for petitioners whose judgments were final before the effective date of the act.

The PCRA provides that if the appellant's judgment became final on or before the effective date of the act, i.e., January 16, 1996, his petition shall be deemed timely if his *first* petition is filed within one year of the effective date of the act. Section 3(1) of the Act of Nov. 17, 1995 (Spec.Sess. No. 1) P.L. 1118, No. 32, see also *Commonwealth v. Peterkin,* 554 Pa. 547, ——, 722 A.2d 638, 641 (1998) (*Peterkin* interprets Section 3(1) on similar facts). Cross's judgment was final on August 14, 1985, before the amendments to the PCRA, but his first petition was filed in 1991, also before the amendments to

the PCRA, and although his *second* petition was filed on January 15, 1997, within one year of the effective date of the act, the petition is not timely, for it is his second, not his first post-conviction petition.[2]

Notwithstanding the lateness of the petition, it will not be deemed untimely under the PCRA if it falls within exceptions to the one-year filing requirement:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1).

■ The essence of Dr. Melnick's recantation is that if he had received more information, i.e., greater knowledge of Cross's family background, knowledge of test results conducted ten years after the trial, and the benefit of another hour examining Cross, he would have formed a different opinion. The question under § 9545 b(1)(ii) is whether "the facts upon

2. Although Cross argues that his second PCRA petition was timely because it was his first petition "since the adoption of Special Sessions Act No. 1995–32," Petition for Post Conviction Relief, para 13, his argument fails because, as we held in *Peterkin*, the "first petition" within the meaning of this section is any post-conviction relief petition filed under 42 Pa.C.S. Ch. 95. The present petition is his second, not his first, and there is no provision in the PCRA for the filing of a second petition later than one year following conviction.

which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence."

Cross does not qualify for exception under § 9545 to the one-year filing requirement for two reasons. First, there are no "facts" upon which the claim is predicated, for the claim is based upon a changed opinion, not on facts. Secondly, if the claim is treated as factual in the sense that facts brought to Dr. Melnick's attention caused him to change his opinion, the inquiry then becomes whether these facts were "unknown to the petitioner and could not have been ascertained by the exercise of due diligence." An examination of the record indicates that these facts—the need for more information about Cross—were either known to Cross or could have been ascertained by due diligence. Cross-examining Dr. Melnick, Cross's counsel asked:

Q. Let me ask you. I came into your office for whatever reason and you felt there was a distinct possibility I could utilize your services. Tell me, how many times would you ask me to come to see you before you would give me your diagnosis. What would you do? Who else would you refer me to?

A. It would depend upon what I needed to know about you, and we would make . . . it would also depend on why you were coming to me, if you were coming to me for the treatment. If you came to me because you were having symptoms and you wanted my opinion about whether or not you had a disorder that required treatment, we would decide together about that question. And in my practice usually people, such as yourself, who do come to me, an evaluation consists of anywhere from say two to six clinical interviews and the examination of other material.

Q. Two to six clinical interviews, doctor. Is that what the time would be?

A. That would be for an evaluation for treatment.

Q. And approximately how long are [sic] each interview?

A. Forty-five to fifty minutes.

Q. Doctor, you mentioned in your direct testimony you had a summary of the trial proceedings. What were you referring to there? What is that?

A. The trial proceedings were summarized for me by Mr. Lewis, and I also had a transcript of Mr. Cross' testimony.

Q. Oh. What do you mean, an oral-written summary or what are we talking about?

A. He told me about the trial.

Q. You indicated you had also part of Dr. Eberle's report, is that correct?

A. Yes. I believe it began with page eleven.

Q. Do you have the raw data upon which he passed his conclusion?

A. I had his report from page eleven to the conclusion.

N.T. Jan 19, 1983, pp. 795–96. It is apparent from this line of cross-examination that Cross's counsel was concerned about the limited time Dr. Melnick spent with Cross before forming a diagnosis, and he was also concerned about whether Dr. Melnick had reviewed sufficient raw data to assist in formulating an accurate diagnosis. Since these concerns are virtually identical with the concerns raised by Dr. Melnick himself thirteen years after the fact, it can fairly be said that the facts upon which Melnick relied to formulate his recantation were known to Cross at the time of trial. That is all that is required under § 9545 b(1)(ii) to conclude that Cross is not eligible for the exception to the one-year filing requirement. Since the second PCRA petition was not timely, it was not error for the PCRA court to dismiss the petition.[3]

Finally, Cross raises a claim based on new matter. We have delayed final decision in this case to give both Cross and the Commonwealth an opportunity to file supplemental briefs in light of a new decision from the United States Court of Appeals for the Third Circuit. This case, *Frey v. Fulcomer,*

---

**3.** Cross' remaining two PCRA claims, that the trial court erred in summarily dismissing the PCRA petition without a statement of reasons, and that Dr. Melnick's recanted testimony should be considered in the context of other alleged errors at the penalty phase are also out of time and do not qualify for exception to the one-year limit.

132 F.3d 916 (3d Cir.1997), holds that certain instructions in death penalty cases are violative of the Eighth Amendment.

*Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) held that jury instructions in a death case which create a substantial possibility that jurors would erroneously believe they must unanimously agree on the existence of a mitigating circumstance before that mitigating circumstance is considered in the weighing process violates the Eighth and Fourteenth Amendments to the federal constitution. Following *Mills,* the Supreme Court decided *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), which held that the proper standard of review of whether jury instructions were open to an erroneous interpretation is: "Whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." 132 F.3d at 921. Applying this standard of review to the case before it, the *Frey* court stated the issue as whether the instruction to the jury could be understood to require a unanimous finding of mitigating circumstances in a death penalty case. The charge in *Frey* was as follows:

Members of the jury, you must now decide whether this defendant should be sentenced to death or life imprisonment. The sentence will depend upon your findings concerning aggravating and mitigating circumstances. The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

. . .

Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstances [sic] and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances

which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment. 132 F.3d at 922. The ambiguity in this charge, as identified by the circuit court is:

... whether it is reasonably likely that the jury could have understood the charge to require unanimity in consideration of mitigating evidence. We need not determine whether the jurors did, in fact, understand the charge to require unanimity in consideration of mitigating evidence – only whether it was reasonably likely.

132 F.3d at 923. The *Frey* court held that because the instruction emphasizes the importance of a unanimous finding and the language requiring unanimity appears in close proximity to the language concerning mitigating circumstances, the charge could be understood to mean that mitigating circumstances must be found unanimously. That mistaken belief could preclude a jury from considering all constitutionally relevant evidence.

In the present case, the charge, in pertinent part, is as follows:

The verdict you return will actually fix the punishment in the case, that is, life imprisonment or the death penalty. And you also should remember your verdict has to be unanimous. It can't be reached upon a majority vote or by any percentage. It has to be the verdict of each and every one of you.

Now, again, your verdict can be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstances or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. And in all other cases your verdict has to be a sentence of life imprisonment.

N.T. 2–26–82, 826–27.

■ Although the charge in this case is indistinguishable from the charge in *Frey*, we disagree with the Third Circuit that the charge as stated creates an ambiguity as to whether the jury was required to find both aggravating circumstances

and mitigating circumstances unanimously. We have previously considered this jury charge, which virtually mirrors the language of the death penalty statute, 42 Pa.C.S. § 9711(c)(iv), and we have determined that it does not violate the rule in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), which forbade an instruction that required jurors unanimously to agree on each individual mitigating circumstance after deciding aggravating factors. *Commonwealth v. Peterkin,* 538 Pa. 455, 465, 649 A.2d 121, 126 (1994).

■■ Moreover, as we stated in *Peterkin:*

even assuming *Mills* applies, *Mills* can not apply retroactively to appellant's case because *Mills* was announced in 1988, six years after appellant's trial and two years after this court's final decision in appellant's direct appeal. In *Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986), this court held that a new rule of law will not be applied retroactively "to any case on collateral review unless that decision was handed down during the pendency of appellant's direct appeal and the issue was properly preserved there or . . . was nonwaivable."

538 Pa. at 465, n. 4, 649 A.2d at 126, n. 4. In this case, Cross's conviction was final on November 12, 1985. Thus, his appeal was final before either *Mills* or *Fulcomer v. Frey* was decided and he is not entitled to benefit retroactively from these decisions, even if they were favorable to his interests, which they are not.[4]

4. Cross erroneously asserts that the Third Circuit's decision in *Frey v. Fulcomer* "reversed" this court's interpretation of *Mills.* Cross is mistaken. This court is not bound by a lower federal court's interpretation of United States Supreme Court decisions, but is bound only by the United States Supreme Court. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 58, n. 11, 117 S.Ct. 1055, 1064, n. 11, 137 L.Ed.2d 170, 188, n. 11 (1997). Thus, this court, which has concurrent jurisdiction with the lower federal courts as to federal constitutional questions, may formulate its own interpretation of Supreme Court precedent, which may be in opposition to that stated by the lower federal courts.

Additionally, Cross's claim based on the Third Circuit's opinion in *Frey v. Fulcomer* is barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which held that "unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become

Because Cross's current PCRA petition is filed out of time and because this court respectfully disagrees with the members of our judicial family on the federal bench as to the legality of the jury instruction in this case, the PCRA petition was properly denied.

Affirmed.

Justice ZAPPALA did not participate in the consideration or decision of this case.

Justice SAYLOR files a concurring opinion in which Justice NIGRO joins.

SAYLOR, Justice, concurring.

On the basis of this Court's precedent, *see, e.g., Commonwealth v. Hackett,* 534 Pa. 210, 222–23, 627 A.2d 719, 725 (1993), as well as the interpretations of the United States Supreme Court,[1] I am obliged to agree that a jury instruction

final before the new rules are announced." *Id.* at 310, 109 S.Ct. 1060. The *Mills* rule was not dictated by prior cases, and it was, thus, a new rule of law. Since Cross's case was final almost three years before *Mills* was decided, he is not entitled to federal relief on this claim.

Secondly, 28 U.S.C. § 2254(d) provides:

**§ 2254. State custody; remedies in Federal courts**

(d) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

Because this court's application of the rule in *Mills* was reasonable and not contrary to federal law as determined by the Supreme Court of the United States, we believe that Cross's claim based on the Third Circuit's opinion in *Frey v. Fulcomer* is not eligible for habeas corpus relief in the federal courts.

1. *See generally Buchanan v. Angelone,* 522 U.S. 269, —— n. 4, 118 S.Ct. 757, 762 n. 4, 139 L.Ed.2d 702 (1998) (suggesting in dictum that capital jury instruction not be subjected to "a strained parsing of the language," but instead be given "the ordinary meaning of [its] language and structure"); *Boyde v. California,* 494 U.S. 370, 381, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990) (directing that, when evaluating a claim that a jury instruction is ambiguous and hence subject to an erroneous interpretation, courts must recognize that jurors are not left to evaluate the instruction's meaning individually, but that "[d]ifferences among

that mirrors the language of Pennsylvania's death penalty statute, 42 Pa.C.S. § 9711(c)(iv), does not violate the dictates of the Supreme Court's decision in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

Nevertheless, in my view such an instruction contains a degree of imprecision that can be avoided merely by employing Pennsylvania Suggested Standard Criminal Jury Instruction 15.2502H(3), which removes any doubt concerning a juror's role in assessing mitigating circumstances. The model instruction provides as follows:

> When voting on the general findings, you are to regard a particular *aggravating* circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular *mitigating* circumstance as present despite what other jurors may believe.

(emphasis in original). The mechanics of the accompanying suggested verdict slip track the model instruction, further directing individual jurors in the manner in which they should apply the statutorily prescribed considerations in their penalty determination.

To promote clarity in this most crucial of jury determinations, and to align our jurisprudence with that of federal courts in this circuit, *see Frey v. Fulcomer*, 132 F.3d 916 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2076, 141 L.Ed.2d 151 (1998); *Jermyn v. Horn*, 1998 WL 754567, 1998 U.S. Dist. LEXIS 16939 (M.D.Pa. Oct. 27, 1998), I would affirmatively require Pennsylvania trial courts to instruct capital sentencing juries in accordance with the standard instruction.

Justice NIGRO joins this Concurring Opinion.

them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions ... likely to prevail"); *Blystone v. Pennsylvania*, 494 U.S. 299, 305, 110 S.Ct. 1078, 1082, 108 L.Ed.2d 255 (1990) (rejecting a claim that Pennsylvania's death penalty statute is "unconstitutionally mandatory" due to its requirement that the jury set the penalty at death if it unanimously finds one or more aggravators and no mitigators, or one or more aggravators that outweigh mitigators).