861 A.2d 919

COMMONWEALTH of Pennsylvania, Appellee,

v.

Zachary WILSON, Appellant.

Supreme Court of Pennsylvania.

Submitted July 25, 2001.

Decided Nov. 19, 2004.

442

Michael Wiseman, Esq., Ellen Berkowitz, Esq., Philadelphia, for Zachary Wilson.

Catherine Marshall, Esq., Robert A. Graci, Esq., Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice SAYLOR.

This is an appeal in a capital case from an order denying post-conviction relief.

On August 3, 1981, Appellant entered a drinking establishment in the City of Philadelphia, brandished a handgun, and fired four rounds into Jamie Lamb ("Lamb"), killing him. As he was shot, Lamb fell against one of his friends, Jeffrey Rahming ("Rahming"). When Appellant turned to flee, he tripped over Edward Jackson ("Jackson"), who had dived onto the floor during the shooting; while they were on the floor together, Jackson was able to view Appellant's face before he scrambled to his feet and ran outside. Jackson and Rahming provided police with descriptions of what they had witnessed, and in March of 1982, police conducted a lineup with Appellant. Although Rahming identified Appellant as the perpetrator, Jackson did not. Appellant was charged with Lamb's murder; however, at the initial preliminary hearing, Rahming failed to identify Appellant, and the charges were dismissed.

While Appellant was incarcerated for an unrelated offense in October of 1983, a fellow inmate, Lawrence Gainer ("Gainer"), asked him why he had killed Lamb—Appellant responded that he had done so because Lamb had killed Appellant's adopted brother, Ronnie Williams.[1] In the summer of 1984, Gainer related Appellant's admission to Officer John Fleming, but refused to cooperate further. In March of 1986, Gainer

1. Ronnie Williams was murdered in 1979; notably, two other individuals, Eugene Brockington and Larry Sutton were convicted of the crime.

again spoke with Officer Fleming concerning Lamb's murder and, on this occasion, agreed to provide a statement to detectives investigating the homicide. As a result, Appellant was re-arrested.

At the ensuing jury trial, the Commonwealth's case centered upon the testimony of Jackson, Rahming, and Gainer. Jackson described the circumstances surrounding the shooting; acknowledged that he told police that he could identify the perpetrator; stated that, although he recognized Appellant in the lineup, he selected another individual because Appellant had threatened him; and explained that he told police of the reason for his actions at the lineup one week before the trial. Jackson then identified Appellant as the individual who shot Lamb. During his testimony, Rahming began by acknowledging his prior criminal record; he then related his observations of Lamb's killing, which he had given to police the day of the incident, and identified Appellant as having committed the crime. Like Jackson, Rahming said that Appellant had threatened him and, as a result, although he had identified Appellant at the lineup, he declined to implicate him at the preliminary hearing. Gainer testified to Appellant's admission and to having related it to Officer Fleming. In addition, both Gainer and his girlfriend, Linda Blakney, indicated that they had received telephone calls from Appellant entreating Gainer not to testify against him, which Blakney interpreted as threatening. Appellant did not testify during the guilt phase, and the sole defense witness was Steven Whitfield, Appellant's fellow prison inmate, who claimed that he had been in the bar at the time of Lamb's killing and had seen the perpetrator, who was not Appellant.

The jury found Appellant guilty, and the case proceeded to a penalty hearing, during which the Commonwealth incorporated the evidence from the guilt phase and offered as aggravating circumstances that, in committing the offense, Appellant knowingly created a grave risk of death to another person in addition to the victim, see 42 Pa.C.S. § 9711(d)(7), and that Appellant had a significant history of felony convictions involving the use or threat of violence to a person, namely, robbery,

aggravated assault, and homicide. *See* 42 Pa.C.S. § 9711(d)(9). Following inquiry from the trial court, Appellant declined to present testimony from family members related to mitigating circumstances, instead testifying that he did not commit the crime, although he wished that he had, as he believed that the victim had killed his adopted brother. The jury returned a verdict of death, finding both aggravating circumstances and no mitigating circumstances. On direct appeal, new counsel was appointed, raising, *inter alia,* issues related to after-discovered evidence in the nature of a recantation by Rahming; trial counsel's ineffectiveness in failing to present evidence that Appellant believed that the victim had killed Appellant's adopted brother; and the trial court's penalty-phase instructions, which purportedly did not explain that unanimity was not required in the finding of mitigating circumstances pursuant to the United States Supreme Court decision in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). This Court affirmed the judgment of sentence, *see Commonwealth v. Wilson,* 538 Pa. 485, 520, 649 A.2d 435, 452 (1994), and the United States Supreme Court denied *certiorari. See Wilson v. Pennsylvania,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995).

On March 11, 1996, Appellant filed a counseled "Petition for Habeas Corpus Relief and Statutory Post–Conviction Relief." *See generally* 42 Pa.C.S. §§ 9541–9546 (the "PCRA"). The petition set forth numerous claims of error, including, with respect to the guilt phase of the trial, allegations that trial and appellate counsel were ineffective in failing to challenge the admission of hearsay evidence that improperly bolstered the testimony of Jackson, Rahming, and Gainer, and that the Commonwealth had used perjured testimony and withheld exculpatory and discoverable evidence involving threats and coercion by the police in relation to these same witnesses. As to the penalty phase claims, Appellant averred that: trial counsel had failed to investigate and present certain mitigating evidence, namely, parental and other abuse during childhood and the existence of mental health problems; trial counsel was ineffective for failing to object to the court's

exclusion of relevant mitigating evidence bearing upon Appellant's motive for the killing; the aggravating circumstances concerning creation of a grave risk of death to another person in addition to the victim of the offense and significant history of felony convictions involving the threat or use of violence are unconstitutionally vague; the trial court erred in failing to instruct the jury that, if Appellant was sentenced to life imprisonment, he would not be eligible for parole; and the trial court erred in not instructing the jury that unanimity was not required in the finding of mitigating circumstances. In addition, the petition contained a general allegation of ineffectiveness on the part of trial and appellate counsel and asserted that the cumulative effect of each of the asserted errors denied Appellant a fair trial.

Appellant filed numerous affidavits in support of the petition, and the PCRA court conducted hearings from July of 1997 through January of 1998, focusing upon the alleged failure of the Commonwealth to disclose exculpatory evidence, the existence of an alibi,[2] and the purported failure of trial counsel to investigate and present certain mitigating evidence. Regarding the exculpatory evidence claim, the proofs expanded beyond the allegation in the PCRA petition to include both nondisclosure of a criminal conviction on the part of Jackson and mental health diagnoses for Jackson and Rahming. In this regard, PCRA counsel, relying upon a 1981 pre-sentence investigation for Jackson, elicited that he had been convicted for impersonating a public servant (a police officer), see 18 Pa.C.S. § 4912,[3] had suffered two fractured skulls, and had been diagnosed as easily confused and as having a weak memory. Appellant also offered expert testimony regarding Jackson's mental health from a psychiatrist, Julie Kessel, M.D., who reviewed the 1981 psychological evaluation and

**2.** This claim was not included in the PCRA petition. *See infra* Part I.

**3.** As such offense has been construed as a crime of dishonesty, *see, e.g.*, *Commonwealth v. Gallagher*, 341 Pa.Super. 152, 160, 491 A.2d 196, 200 (1985), Appellant argues that, if trial counsel had been aware of it, he could have introduced the conviction to impeach Jackson's credibility. *See Commonwealth v. Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987).

opined that Jackson would have difficulty recalling events accurately and "confabulates."[4] Rahming testified, recanting his identification of Appellant as the perpetrator of the homicide,[5] and acknowledging that he had been diagnosed as suffering from schizophrenia; further, contrary to his trial testimony, Rahming admitted to having ingested alcohol, marijuana, and psychotropic medication at the time that he witnessed the shooting. Rahming also claimed that: a detective had offered him cocaine in exchange for his signed statement implicating Appellant; someone in the District Attorney's Office had given him money to sign the statement; and a detective from the District Attorney's Office had taken him to a hospital following his testimony at trial, where he was admitted for a psychiatric evaluation. As with Jackson, Appellant introduced expert testimony from Dr. Kessel, who reviewed Rahming's mental health records and concluded that the psychiatric hospitalization following his testimony at trial suggests that he may not have been able to differentiate reality from delusion.

Appellant also presented witnesses who claimed that: Gainer had admitted to having testified falsely at Appellant's trial; Officer Fleming was aware of a gambling business run by Gainer's father; and Gainer provided information in exchange for police protection of his father's business. In this same vein, Appellant called witnesses who indicated that Officer Fleming harassed and threatened Jackson, Rahming, and Gainer to incriminate Appellant.

Officer Fleming denied knowledge of a gambling business run by Gainer's father and maintained that Gainer had supplied information voluntarily. When questioned as to whether he had ever given money to Gainer, Officer Fleming admitted to having occasionally made interest-free loans to Gainer. The assistant district attorney who prosecuted Appellant ac-

4. Dr. Kessel defined confabulation as an organic symptom that prompts an individual to fabricate a response when asked a particular question.

5. As noted, Rahming's prior recantation was rejected as a basis for relief in Appellant's direct appeal. *See Wilson*, 538 Pa. at 511–12, 649 A.2d at 448–49.

knowledged that she would have disclosed Jackson's conviction for impersonating a public servant had she been aware of it,[6] and asserted that she did not have access to probation records, which would have revealed the existence of mental health issues concerning Jackson and Rahming. *See generally* Pa.R.Crim.P. 703(A) (providing for the confidentiality of presentence reports and related psychological and psychiatric reports). Moreover, she did not recall that Rahming had been taken to a hospital following his testimony for purposes of a psychiatric admission, although she noted that Rahming was homeless and had at one point lived in a shelter. The remaining guilt-phase issue developed during the hearings was the alleged existence of an alibi for Appellant, for which Appellant presented testimony from a former employer, who stated that he had checked a calendar in his shop, which he no longer had in his possession, to determine that Appellant had been working on the day of the homicide.

In his testimony concerning various guilt-phase issues, trial counsel stated that, during his conversations with Appellant, there was never any mention of a potential alibi; rather, their discussions centered solely upon challenging the identification testimony. Trial counsel testified that, had he been aware of Jackson's prior record, he would have used it to impeach him and, similarly, had he been aware of the mental health histories of Jackson and Rahming, he would have attempted to use such information to challenge the credibility of their identifications.

Regarding the penalty phase, Appellant presented testimony from friends and family members, indicating that he was physically and emotionally abused by his mother, and that he had suffered closed head trauma at the hands of his mother and from neighborhood gang members. Appellant also presented expert testimony from two psychiatrists, Richard Dudley, M.D., and Dr. Kessel, and a neuropsychologist, Barry Crown, Ph.D., each of whom examined Appellant and reviewed 1975 psychological and psychiatric evaluations of him, together

6. At the direction of the PCRA court, the prosecutor's file was reviewed, and did contain a record reflecting the relevant conviction.

with affidavits from friends and family members. Dr. Dudley concluded that Appellant suffered from serious cognitive deficits and a delusional disorder, which he characterized as an extreme mental or emotional disturbance, and which he determined was present at the time he committed the offense. Dr. Dudley noted that evidence of Appellant's cognitive deficits was indicated in Appellant's school records, and the 1975 mental health evaluation of Appellant prior to the offense would have raised concerns, warranting further investigation. Dr. Kessel reached similar conclusions, although she acknowledged that Appellant "was absolutely unrevealing of overt pathology" and desperately wanted to appear mentally well during her examination. According to Dr. Crown, neuropsychological testing revealed that Appellant had brain damage and a borderline IQ, which he described as a substantial impairment.

Responding to such evidence, trial counsel conceded that he did not interview witnesses or family members in preparation for the penalty phase or secure Appellant's school or probation records, explaining that his reason for such decision was that Appellant was not interested in mitigation and was adamant in this regard. Furthermore, trial counsel emphasized that he had discussed the statutory mitigating circumstances with Appellant and the need to call upon family members, and that the trial court had similarly questioned Appellant concerning such evidence. Although noting that Appellant did not appear to be mentally impaired, trial counsel acknowledged that, had he been aware of the psychological report in Appellant's probation records, it would have prompted further investigation.

The Commonwealth offered no evidence of its own, and the PCRA court denied relief on Appellant's petition. In its opinion pursuant to Rule of Appellate Procedure 1925, addressing the hearsay claim of improper bolstering, the court noted that such evidence related to the prior consistent statements of Jackson, Rahming, and Gainer. Portraying Appellant's defense as centered upon the credibility of those witnesses, the court determined that the admission of their prior

consistent statements during direct examination was proper. Concerning the claim of perjured testimony and recantation by Rahming, the court observed that Rahming had recanted prior to Appellant's direct appeal, that this Court had rejected such claim, and that Rahming's most recent recantation was inconsistent with the earlier version. The court thus determined that Appellant was not eligible for relief, since this issue had been previously litigated. Describing the evidence concerning Jackson's purported perjury as in the form of unsubstantiated hearsay, the court found that the claim was not cognizable. The court did not discuss this allegation as it related to Gainer. The court next addressed Appellant's alibi claim, finding that such evidence lacked any credibility, since an individual with an alibi would have informed his lawyer of it at some point between 1981 and the time of Appellant's trial, 1988.

As to the penalty phase, and in particular the claim that trial counsel failed to present mitigating evidence, the court found that Appellant's allegation concerning the mental health evidence was without merit, reasoning that there was no evidence to establish that Appellant suffered from the alleged mental disturbances at the time of the murder or that such evidence was available to trial counsel. Furthermore, the court indicated (erroneously) that Appellant had not produced any evidence to show that a mental health professional or any doctor had examined him prior to the commission of the murder. Thus, the court reasoned, the opinion testimony of Drs. Dudley and Crown was unconvincing, as it was unsupported by pre-existing medical evidence and, instead, was premised upon interviews of Appellant and affidavits from his friends and family members. The court also stated (also erroneously) that Dr. Dudley never examined Appellant; observed that given Appellant's strategy of denying commission of the killing, the mitigation evidence would have weakened the evidence presented; and concluded that Appellant had failed to demonstrate that such evidence would have led the jury to find one or more mitigating circumstances that would have equaled or outweighed the aggravating circumstances.

The court did not otherwise address the mitigating evidence surrounding Appellant's purported abuse during childhood or the opinions of Dr. Kessel.

Discussing Appellant's argument that he was improperly precluded from presenting mitigating evidence respecting motive to the jury, namely, that the victim had killed Appellant's adopted brother, the court stated that the Supreme Court had rejected this issue on direct appeal and, in any event, the jury was able to consider Appellant's testimony on this issue. As to the challenges involving the aggravating circumstances of a significant history of felony convictions involving the use or threat of violence and knowingly creating a grave risk of death to another, the court ruled that these circumstances were not unconstitutionally vague. The court rejected Appellant's assertion that he was entitled to an instruction that life imprisonment in Pennsylvania means life without the possibility of parole, as Appellant's case predated the United States Supreme Court decision in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which required the instruction where future dangerousness was at issue. Moreover, the court found that, even if such instruction was required at the time of Appellant's trial, future dangerousness had not been placed before the jury. Likewise, the court determined that the jury instructions respecting mitigating circumstances were consistent with United States Supreme Court precedent, and that the jurors were not misled into believing that such circumstances must be found unanimously.

## I. Waiver

■ Preliminarily, Appellant's brief in this Court includes issues that were not pled in his PCRA petition, specifically, claims based on: the alleged failure of the Commonwealth to provide exculpatory evidence relating to Jackson's prior *crimen falsi* conviction for impersonating a public servant; mental health evaluations of Jackson and Rahming that purportedly could have been used to impeach them; after-discovered evidence involving Officer Fleming and Gainer focusing upon corruption in the 39th Police District; Officer Fleming's al-

leged participation in such misconduct; a connection between Gainer and Officer Fleming that casts doubt on their trial testimony; and the existence of an alibi. Appellant contends that, with respect to the claims concerning exculpatory evidence involving Jackson and Rahming, these issues were included under Claim IX in the PCRA petition, in Appellant's "renewed motion for discovery," and in Appellant's post-hearing memorandum. To the extent that the exculpatory evidence claims were not included in Appellant's PCRA petition, he argues that such omission occurred only because the Commonwealth had improperly suppressed the foundation for those claims. Appellant also emphasizes that the PCRA court, without objection from the Commonwealth, permitted Appellant to present evidence and argument on these issues and, in any event, the merits of the additional claims can be reached, as the relaxed waiver rule was in effect during the disposition of Appellant's PCRA petition.

Although Appellant's PCRA petition included an allegation that the Commonwealth had withheld discoverable evidence, such evidence was described as coercion and threats by Officer Fleming and a detective directed against Jackson, Rahming, and Gainer, causing them to falsely incriminate Appellant. The averments supporting the allegation did not reference, most notably, Jackson's prior conviction, the mental health evidence concerning Jackson and Rahming, or the asserted after-discovered evidence relating to Officer Fleming and Gainer. Neither Appellant's discovery motion nor his "Post–PCRA Hearing Memorandum" is a substitute for a sufficient PCRA petition and, likewise, neither can be construed as an amendment to such a petition. *See generally* Pa.R.Crim.P. 905(A), (D) (providing that permission to file an amended PCRA petition may be granted by leave of court and describing the requirements for such petition). While certain of the evidence supporting these claims may not have been available to Appellant when he filed his PCRA petition, particularly the mental health records of Jackson and Rahming,[7] once such records were provided to Appellant, he had the opportunity to

7. The mental health records were contained in court files as part of presentence reports and in hospital records.

pursue amendment of his petition, but failed to do so. This Court has previously rejected claims as waived in similar circumstances. *See Commonwealth v. Thomas*, 560 Pa. 249, 254 & n. 4, 744 A.2d 713, 715 & n. 4 (2000).[8] Consequently, as Appellant failed to plead the claims involving the alleged exculpatory evidence relating to Jackson and Rahming, after-discovered evidence involving Officer Fleming, and the purported alibi, these issues are waived.

Connected with the after-discovered and suppressed evidence claims respecting Officer Fleming, Appellant also asserts error on the part of the PCRA court in denying discovery requests for information concerning purported corruption in the 39th District, refusing to permit PCRA counsel to inspect Officer Fleming's personnel file, and disallowing Appellant from calling as witnesses certain 39th District police officers. As these allegations of error relate to claims that were not properly before the PCRA court, we will not address them here.

8. As noted, although these claims were not included in the PCRA petition, and although Appellant never sought leave to amend his petition, evidence relating to the issues was presented during the hearings; moreover, the PCRA court proceeded in its opinion to address Appellant's alibi claim, without noting that it was not included in the PCRA petition, but declined, without explanation, to address the exculpatory evidence allegations related to Jackson and Rahming. While Appellant's presentation of evidence before the PCRA court on issues not included in his petition, coupled with the PCRA court's inconsistent treatment of such issues, are troubling, these circumstances do not serve as a substitute for complying with the pleading requirements contained in the PCRA and the Rules of Criminal Procedure. *See generally* Pa.R.Crim.P. 902(A)(11), (12), (B) (stating that the PCRA petition shall include the grounds for relief and the facts supporting each ground, and that failure to state a ground shall preclude a defendant from raising it in any proceeding for post-conviction collateral relief). As recently emphasized in *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517 (2001), the pleadings and proofs comprise the essential predicate for appellate review of post-conviction proceedings by this Court. *See id.* at 569, 782 A.2d at 527.

Appellant's reliance upon relaxed waiver also does not implicate review, since the Court abrogated its application in the post-conviction context, *see Commonwealth v. Albrecht*, 554 Pa. 31, 44–45, 720 A.2d 693, 700 (1998), and has maintained that such abrogation should be applied retroactively. *But see Commonwealth v. Ford*, 570 Pa. 378, 398–400, 809 A.2d 325, 338 (2002) (Saylor, J., concurring).

## II. Guilt Phase

Appellant first challenges the admission of hearsay in the form of prior consistent statements from the Commonwealth's three primary witnesses, Jackson, Rahming, and Gainer, arguing that the admission of such testimony violated state evidentiary law and Appellant's constitutional right to confront witnesses against him. *See* U.S. CONST. amend. VI; Pa. CONST. art. I, § 9. In advancing this claim, Appellant asserts (as he must to survive the waiver of the underlying claim), albeit summarily, that trial and appellate counsel were ineffective for failing to object to and litigate this error.[9]

To prevail on his ineffectiveness allegations, Appellant must demonstrate, *inter alia,* that the underlying claim is of arguable merit; no reasonable strategic basis existed for trial counsel's failure to object; and counsel's error resulted in prejudice, or more specifically, that there is a reasonable probability that the outcome of the proceeding would have been different. *See Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1999).

In the first instance, Appellant fails to elaborate upon his constitutional claim, other than to assert that his right to confrontation was violated, since the statements were not admitted pursuant to a "firmly rooted" hearsay exception. The Confrontation Clause of the Sixth Amendment "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) (plurality opinion). These protections are not violated, where, as here, a testifying witness's out-of-court statement is admitted and the witness is subject to full and effective cross-examination. *See*

9. In *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003), the Court determined that, in certain cases, a remand will be appropriate to permit a post-conviction petitioner to correct defects in layering multiple claims of ineffective assistance of counsel. *See id.* at 590–91, 832 A.2d at 1024. Although such layering defects are evident in the present case, the remand procedure is unnecessary where, as here, the underlying claim of ineffective assistance of counsel is defective or meritless. *See id.* at 591–92, 832 A.2d at 1024–25.

*California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

 With regard to the state evidentiary law dynamic of Appellant's claim, in general, an out-of-court statement of a witness that is consistent with his trial testimony constitutes inadmissible hearsay. *See Commonwealth v. Hutchinson*, 521 Pa. 482, 486–87, 556 A.2d 370, 372 (1989). Where, however, the prior consistent statement is one of identification, it is admissible as an exception to the hearsay rule as substantive evidence, regardless of impeachment, provided that the declarant is present and subject to cross-examination. *See Commonwealth v. Ballard*, 501 Pa. 230, 233, 460 A.2d 1091, 1092 (1983); *Commonwealth v. Saunders*, 386 Pa. 149, 155, 125 A.2d 442, 445 (1956); *accord* Pa.R.E. 803.1(2).[10] Such statements also may be admitted to rehabilitate a witness whose credibility has been challenged by an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory, and where the prior statement was made before the charge existed. *See Commonwealth v. Counterman*, 553 Pa. 370, 405, 719 A.2d 284, 301 (1998); *accord* Pa.R.E. 613(c). When relevant for this purpose, the statement is admissible on rebuttal for rehabilitation, but not as substantive evidence. *See Commonwealth v. Vento*, 410 Pa. 350, 353–54, 189 A.2d 161, 163 (1963). This general order-of-proof prescription is consistent with the rehabilitative purpose for the admission. *See generally* DAVID F. BINDER, HEARSAY HANDBOOK § 2:12 at 2–80 (4th ed.2001). Although such statements should therefore be introduced as rebuttal evidence, where the defense is centered upon attacking a witness's credibility consistent with a basis that would permit introduction of a prior consistent statement to rehabilitate, the trial court is afforded discretion to allow anticipatory admission of

**10.** The rationale for this exception is that the "earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." DAVID F. BINDER, BINDER ON PENNSYLVANIA EVIDENCE § 803.1(2) (3rd ed.2003) (quoting *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865, 867 (1960)).

the prior statement. *See Commonwealth v. Smith*, 518 Pa. 15, 39–40, 540 A.2d 246, 258 (1988).

■ With respect to Jackson, Appellant contends that the Commonwealth improperly bolstered Jackson's in-court identification when he testified on direct examination that he had witnessed the shooting, that Appellant was the perpetrator, and that he had advised the police immediately following the shooting that he could identify the gunman. In addition, Appellant argues that the Commonwealth reinforced Jackson's identification testimony by examining him respecting a statement which he had provided to detectives shortly before trial, in which he explained that, although he recognized Appellant in the lineup, he purposely identified the wrong person. For similar reasons, Appellant maintains that Rahming's identification testimony was improperly augmented during direct examination, when the Commonwealth elicited that he had previously identified Appellant at a lineup and, on redirect examination, that he had provided a statement to detectives indicating what he had witnessed at the time of the shooting. Each of these instances, however, involved prior statements of identification from witnesses who were present and available for cross-examination. Under the circumstances, therefore, their admission was permissible. *See Commonwealth v. Ly*, 528 Pa. 523, 532, 599 A.2d 613, 617 (1991); Pa.R.E. 803.1(2).

■ With respect to Gainer, Appellant contends that it was improper for the Commonwealth to elicit his prior consistent statements on direct examination, specifically, that he had advised Officer Fleming of Appellant's inculpatory admission to him. Appellant also maintains that it was impermissible for the Commonwealth to have Officer Fleming reiterate Gainer's statements in which he related Appellant's admission. Trial counsel, however, cross-examined Gainer, attacking his credibility and suggesting that his testimony was a recent fabrication or a result of a corrupt motive.[11] Given counsel's tactic, it

11. While counsel's tactic is not entirely clear from the cross-examination itself, his use of the cross-examination in closing argument makes

is at least arguable that the trial court would have been within its discretion to allow the Commonwealth to elicit Gainer's prior consistent statements during his direct examination, as an exception to the general protocol for the order of proof of rebuttal-type evidence, had a timely objection to the testimony been lodged. *See Smith*, 518 Pa. at 39–40, 540 A.2d at 258.[12] Moreover, Appellant fails to elaborate on the degree of prejudice resulting from the asserted ineffectiveness of trial counsel in failing to object, in terms of its probable impact on the outcome of the case. In such circumstances, relief is unavailable. *Accord Commonwealth v. Pierce*, 567 Pa. 186, 216–17, 786 A.2d 203, 221–22 (2001); *Commonwealth v. DeHart*, 539 Pa. 5, 15, 650 A.2d 38, 43 (1994).

Regarding the asserted failure on the part of the Commonwealth to provide exculpatory evidence of Officer Fleming's coercion and intimidation of witnesses, the PCRA court rejected the claim in part on credibility grounds, and in part because aspects of the claim were previously litigated, *see* PCRA Court Opinion at 7–10; *see also supra* note 6, and we discern no error in the court's determinations in this regard. While the PCRA court's opinion fails to mention the aspect of the claim alleging coercion/intimidation of Gainer, no evidence of record supports such a claim.[13]

the strategy apparent. *See, e.g.,* N.T., Jan. 7, 1988, at 51–52 ("Come on, people. Does [Gainer's testimony] have a ring of truth to it? The informant, the man who has the theft conviction?"); *accord* Initial Brief of Appellant at 25 ("Trial counsel attempted to demonstrate that Gainer was a paid informant for Police Officer John Fleming and that the alleged information in this case was fabricated as part of a *quid pro quo*.").

12. We note, parenthetically, that trial counsel did not request and the court did not issue an instruction explaining that Gainer's prior consistent statement could only be considered for purposes of evaluating his credibility. *See Commonwealth v. Swint*, 488 Pa. 279, 289, 412 A.2d 507, 512 (1980); Pa. SSJI (Crim.) 4.08C. Such omission, in the absence of a specific request, does not necessarily warrant relief, *see Vento*, 410 Pa. at 354, 189 A.2d at 163, and, in any event, Appellant does not advance the absence of an instruction as a basis for counsel's ineffectiveness.

13. Also included in Appellant's merits brief is a request to remand for an evidentiary hearing based upon newly discovered evidence concerning purported racial discrimination in jury selection. As this request

### III. Penalty Phase

At the outset, Appellant's central challenges to the constitutionality of the aggravating circumstances denominated at Sections 9711(d)(7) (grave risk) and (d)(9) (significant record of prior felony convictions) of the Sentencing Code, 42 Pa.C.S. § 9711(d)(7), (9), are controlled by the prior decisional law, for example, *Commonwealth v. Wharton*, 530 Pa. 127, 152–53, 607 A.2d 710, 723 (1992) (upholding the Section 9711(d)(7) aggravator against a vagueness challenge), and *Commonwealth v. Miller*, 560 Pa. 500, 522, 746 A.2d 592, 604 (2000) (same, with respect to the Section 9711(d)(9) aggravator). We decline to accept Appellant's invitation to reconsider those decisions here.[14]

■ With respect to the grave risk aggravator, Appellant also urges that the prosecutor's closing argument in the penalty phase erroneously defined the circumstance as applying where individuals were placed in jeopardy or endangered (as opposed to placed in grave risk of death) and the evidence was insufficient to sustain the aggravator. Depending on grammatical construction, Appellant's contention that the prosecutor's suggestion that putting others "in jeopardy, even danger of death" implicates Section 9711(d)(7), N.T., Jan. 11, 1988, at 40, might give rise to a colorable objection. No objection was lodged, however, and the trial court accurately defined Section 9711(d)(7) in the jury instructions. *See* N.T., Jan. 11, 1988, at 46. Furthermore, Appellant's conduct in firing a gun in a barroom with ten to fifteen people present and in close proximity, including Rahming, who was standing behind Lamb, provided a sufficient basis for the jury to

was also presented in an application filed by Appellant, which was denied on December 4, 2001, further review of the issue is unnecessary.

**14.** With respect to the significant-record-of-prior-felony-convictions aggravator, 42 Pa.C.S. § 9711(d)(9), we note that a federal court has afforded Appellant a new trial on a first-degree murder conviction that was a component of the Commonwealth's supporting evidence. *See Wilson v. Beard*, 314 F.Supp.2d 434, 450 (E.D.Pa.2004). Appellant's present claims, however, do not include a challenge to the sufficiency of the evidence supporting the (d)(9) aggravator, or other argumentation that would implicate such decision in terms of the present appeal, and we decline to undertake such an assessment *sua sponte*.

conclude that in shooting Lamb, Appellant created a grave risk of death to another person. *See Commonwealth v. Moore,* 534 Pa. 527, 562, 633 A.2d 1119, 1136 (1993) (concluding that the evidence supported the grave risk aggravator where a bullet fired by the defendant traveled in close proximity to and could have easily harmed another). As such, and in absence of any development concerning prejudice accruing by virtue of trial counsel's failure to object, no relief is available on this claim.

Next, Appellant argues that his constitutional right to have the jury consider mitigating evidence, *see Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978), was violated when the trial court precluded him from testifying that he believed that Lamb had killed Appellant's adopted brother. Appellant maintains that this testimony was relevant as bearing upon the circumstances of the offense, *see* 42 Pa.C.S. 9711(e)(8), specifically, his motive. In addition, Appellant summarily asserts that prior counsel were ineffective for failing to raise and litigate this issue, apparently as it is apprehended that the underlying claim is waived and/or previously litigated. *See Wilson,* 538 Pa. at 515, 649 A.2d at 450 (discussing the jurors' consideration of Appellant's asserted beliefs in the relevant regard). Contrary to Appellant's contention, however, he specifically testified to his belief respecting the murder of his adoptive brother. Although the prosecutor objected immediately following this testimony, the jury was not instructed to disregard such evidence and, on cross-examination, Appellant reiterated his belief regarding Lamb's involvement in the murder of Appellant's brother. Consequently, the jury was not precluded from receiving this evidence. *Accord id.* (noting that the defense wished for the jury to "consider that Appellant believed that the victim, Jamie Lamb, was responsible for the murder of his adopted brother. The jury unanimously rejected this evidence as a basis for a mitigating circumstance."). Correspondingly, counsel cannot be deemed ineffective for failing to raise a meritless issue. *See Commonwealth v. Travaglia,* 541 Pa. 108, 120–21, 661 A.2d 352, 358 (1995).

■ Appellant argues that the penalty phase instructions and verdict sheet were unconstitutional in light of the United States Supreme Court decision in *Mills,* 486 U.S. at 367, 108 S.Ct. at 1860, as they indicated that unanimity was required for the jury to find mitigating circumstances.[15] Since, however, this issue was raised on direct appeal, *see Wilson,* 538 Pa. at 516, 649 A.2d at 451,[16] it has been previously litigated and cannot serve as a basis for relief under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3). Nevertheless, Appellant urges reconsideration of the issue, as the decision on direct appeal was issued prior to the opinion by the United States Court of Appeals for the Third Circuit in *Frey v. Fulcomer,* 132 F.3d 916 (3d Cir.1997), which held, *inter alia,* that a penalty phase instruction substantially similar to the one at issue here violated *Mills.* This Court has previously determined, however, that it is not bound by the Third Circuit's interpretation in this regard and has previously declined to accept it. *See Commonwealth v. Breakiron,* 556 Pa. 519, 537 n. 7, 729 A.2d 1088, 1097 n. 7 (1999); *Commonwealth v. Cross,* 555 Pa. 603, 612–14, 726 A.2d 333, 337–38 (1999).[17] Accordingly, this issue will not be revisited in the present case.

**15.** The United States Supreme Court's decision in *Mills* was issued on June 6, 1988, approximately five months after Appellant's trial. Appellant's judgment did not become final, however, until 1995, when the United States Supreme Court denied *certiorari.* Recently, the United States Supreme Court has ruled that the decision in *Mills* constituted a new rule and cannot be retroactively applied to cases in which the judgment became final before the decision was issued. *See Beard v. Banks,* 541 U.S. 406, ——, 124 S.Ct. 2504, 2515, 159 L.Ed.2d 494 (2004). As Appellant's judgment was not final at the time the ruling in *Mills* was issued, and as Appellant raised and this Court addressed the *Mills* issue on direct appeal, the retroactivity concern is not implicated.

**16.** This issue was also presented to the United States Supreme Court in Appellant's unsuccessful request for *certiorari. See Wilson,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91.

**17.** In this regard, the Supremacy Clause does not obligate state courts to follow decisions by federal courts of appeal on issues of federal constitutional dimension, *see generally Lockhart v. Fretwell,* 506 U.S. 364, 375–76, 113 S.Ct. 838, 846, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring), and this Court in *Travaglia,* 541 Pa. at 130 n. 15, 661 A.2d at 363 n. 15, disavowed its prior practice of deferring to Third Circuit decisions on federal constitutional issues. *See also Commonwealth v. Clark,* 551 Pa. 258, 275, 710 A.2d 31, 39 (1998). Where, as here,

 Citing to the United States Supreme Court decision in *Simmons,* 512 U.S. at 154, 114 S.Ct. at 2187, Appellant next argues that the trial court erred in failing to instruct the jury that Appellant would be ineligible for parole if he should be sentenced to life imprisonment, and that all prior counsel were ineffective in failing to raise and litigate this issue. A defendant is entitled to such an instruction upon request where the prosecution has placed his future dangerousness at issue, *see Commonwealth v. Spotz,* 563 Pa. 269, 288, 759 A.2d 1280, 1291 (2000), and Appellant argues that the Commonwealth placed his future dangerousness at issue through both testimony and argument. However, *Simmons* was not decided until approximately six years after Appellant was tried and, significantly, at the time of Appellant's trial, the law in Pennsylvania prohibited juries from receiving such information. *See Commonwealth v. Henry,* 524 Pa. 135, 160, 569 A.2d 929, 941 (1990). Moreover, *Simmons* has been interpreted as creating a new rule of law, *see O'Dell v. Netherland,* 521 U.S. 151, 153, 117 S.Ct. 1969, 1971, 138 L.Ed.2d 351 (1997), and, as such, it may only be applied to cases on collateral review where the decision was handed down during direct review, and the issue was properly raised and preserved. *See generally Fiore v. White,* 562 Pa. 634, 642, 757 A.2d 842, 846–47 (2000) (articulating the standard for applying a new rule of law to a case on collateral review). Here, although *Simmons* was issued while Appellant's case was on direct appeal,[18] the absence of the instruction was not raised in the trial court and preserved on appeal. Consequently, as counsel cannot be deemed ineffective for failing to anticipate a change in the law, Appellant's claim is without merit. *See Commonwealth v. Rollins,* 558 Pa. 532, 560, 738 A.2d 435, 451 (1999).

 Appellant next contends that trial counsel's stewardship was deficient in his failure to conduct a reasonable

retroactivity concerns are not implicated, this author would favor a reexamination of the *Mills'* issue. The substantial obstacles to such review are made clear, however, by Mr. Justice Castille, in concurrence.

**18.** *Simmons* was issued on June 17, 1994, and this Court affirmed Appellant's judgment of sentence on November 9, 1994.

investigation into the mitigating circumstances, which would have revealed that Appellant was emotionally and physically abused as a child, experienced trauma to his head that affected his cognitive functioning, and suffered from an impaired mental state. The Commonwealth responds that Appellant has not demonstrated that such evidence was reasonably known or available to trial counsel, particularly since Appellant advised counsel not to contact his family members and pursue mitigating evidence.

In this regard, we acknowledge that some jurisdictions require capital counsel to conduct an investigation into potential mitigation evidence to ensure that a defendant's waiver of such proof is knowing and intelligent. *See, e.g., Koon v. Dugger*, 619 So.2d 246, 250 (Fla.1993) (requiring that counsel state on the record "whether, based upon his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be"). Other jurisdictions, however, do not so require, provided that the defendant's waiver is knowing, intelligent, and voluntary. *See, e.g., State v. Smith*, 993 S.W.2d 6, 14 (Tenn.1999) (stating that counsel will not be adjudged ineffective for following the decision of a competent and fully informed defendant who chooses to forego investigation and presentation of mitigating evidence, and requiring the trial court to conduct an on-the-record colloquy with the defendant to protect his interests). The capital jurisprudence of this Court has aligned more closely with the latter line of cases. For example, in *Commonwealth v. Michael*, 562 Pa. 356, 755 A.2d 1274 (2000) (plurality opinion), the Court relied on the defendant's waiver in declining to find his trial counsel ineffective for failing to investigate potential mitigating evidence, even though the trial court had instructed counsel to contact the defendant's friends and family members and to prepare a penalty phase defense. *See id.* at 366–67, 755 A.2d at 1279–80; *cf. Commonwealth v. Marinelli*, 570 Pa. 622, 654–55, 810 A.2d 1257, 1275–76 (2002).[19] While we are not unmindful that the adequacy of

19. This author dissented in *Michael* based upon the view that "[n]otwithstanding the client's expressed wishes, lacking proper preparation

counsel's investigation affects his ability to advise a defendant concerning the meaning of mitigation evidence and possible mitigation strategy, *see generally Battenfield v. Gibson*, 236 F.3d 1215, 1229 (10th Cir.2001), in this case, counsel testified at the PCRA hearing that he discussed with Appellant the mitigating factors under the death penalty statute, *see* 42 Pa.C.S. § 9711(e), as well as the importance of contacting family members and of presenting such evidence to humanize him in the eyes of the jurors. Moreover, prior to the penalty hearing, the trial court and defense counsel advised Appellant on the record that he could present evidence concerning his character and the circumstances of the offense, including testimony from family members. Of additional significance, Appellant does not specifically challenge the adequacy of his waiver or take issue with trial counsel's testimony respecting their discussions; indeed, Appellant did not testify at the PCRA hearings. Under such circumstances, therefore, and although a more thorough on-the-record colloquy respecting the waiver should have been accomplished on the trial record,[20] we conclude that Appellant has not established that his

by trial counsel and an on-the-record articulation of that preparation, there is simply no basis in the trial record from which to assess whether the defendant's decisions were properly informed," *Michael*, 562 Pa. at 377, 755 A.2d at 1285 (Saylor, J., dissenting), and concurred in *Marinelli* based on the position of a majority of Justices in *Michael*, *see Marinelli*, 570 Pa. at 662, 810 A.2d at 1280 (Saylor, J., concurring).

**20.** Given the consequences of a defendant's decision waiving the introduction of mitigating evidence, a trial court should conduct an on-the-record colloquy informing him of the right to present such proof, its importance, and, after ensuring that he understands its importance and the risks associated with a waiver, whether he wishes to forego the presentation of mitigating evidence. *See Commonwealth v. Crawley*, 514 Pa. 539, 550 n. 1, 526 A.2d 334, 340 n.1 (1987)(directing that trial court judges "conduct an in-chambers colloquy with the Defendant in the presence of counsel to determine that the Defendant himself has chosen not to submit evidence of mitigation and that he is aware that the verdict must be a sentence of death if the jury finds at least one aggravating circumstance and no mitigating circumstances."). *See generally Commonwealth v. Williams*, 573 Pa. 613, 631 n. 12, 828 A.2d 981, 992 n. 12 (2003)(noting that, "[t]his Court has also required a colloquy before accepting any other significant waiver in capital cases such as waiving the right to counsel, the right to a jury trial, and entering a guilty plea as opposed to proceeding to trial"); *State v. Ashworth*, 85 Ohio St.3d 56, 706 N.E.2d 1231, 1237 (Ohio 1999), *cert.*

counsel rendered ineffective assistance in following his wishes respecting the investigation and presentation of mitigation evidence. *Accord Smith,* 993 S.W.2d at 14 (holding that counsel will not be found ineffective for following the decision of a competent and fully informed defendant who opts to forego the investigation into and presentation of mitigating evidence).[21]

Finally, Appellant contends that he is entitled to relief due to the cumulative effect of the errors alleged. Having determined, however, that no individual claim has merit, Appellant is not entitled to relief based upon alleged cumulative effect. *See Rollins,* 558 Pa. at 562, 738 A.2d at 452.

The order of the PCRA court is affirmed.[22]

Justice CASTILLE files a concurring opinion.

Justice NIGRO files a concurring opinion.

Justice CASTILLE, concurring.

I join the Majority Opinion, with the exception of the following two points.

First, with respect to appellant's claim that the penalty phase jury instructions and verdict sheet were unconstitutional under *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Majority correctly notes that appellant litigated this very claim on direct appeal, and therefore, he cannot seek to relitigate it in the face of the previous litigation proscription of the Post Conviction Relief Act ("PCRA").[1] Despite this clear statutory bar against relitigation, however,

*denied,* 528 U.S. 908, 120 S.Ct. 252, 145 L.Ed.2d 212 (1999); *Wallace v. State,* 893 P.2d 504, 512–13 (Okla.Crim.App.1995); *Smith,* 993 S.W.2d at 14.

**21.** Although the PCRA court did not base its decision regarding this claim on the above reasoning, an appellate court may sustain a correct judgment for any reason that is supported by the record. *See Commonwealth v. Shaw,* 494 Pa. 364, 368, n. 1, 431 A.2d 897, 899 n. 1 (1981).

**22.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania.

**1.** 42 Pa.C.S. § 9541 *et seq.*

the Majority appears to entertain on the merits appellant's request that he be permitted "reconsideration" of the issue on grounds that, in a case decided three years after this Court decided his direct appeal, the U.S. Court of Appeals for the Third Circuit decided *Frey v. Fulcomer,* 132 F.3d 916 (3d Cir.1997), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2076, 141 L.Ed.2d 151 (1998), which held that a similar Pennsylvania jury instruction violated *Mills.* Instead of rejecting this claim outright, the Majority declines to revisit the *Mills* issue on the basis that this Court has not accepted the *Frey* Court's view of the merits of the *Mills* question. The Majority's analysis leaves the impression that, if the Court were in agreement with the substance of the *Frey* decision, reconsideration of the previously litigated claim would be appropriate upon PCRA review. Indeed, in a footnote, the learned author of the Majority Opinion notes his preference that this Court reexamine its view of *Mills* in light of the Third Circuit's later, contrary precedent. Op. at 932–33 & n. 17.

In my view, appellant's *Frey*-based argument fails, not simply because this Court disagrees with *Frey* on the merits, but for the more fundamental reason that non-binding, subsequent decisions of the lower federal judiciary are no basis upon which this Court can dismiss the PCRA's previous litigation provision. The PCRA contains no such exception to the previous litigation bar for the very reason that decisions of lower federal courts do not bind this Court. Thus, for PCRA previous litigation purposes, it would not matter if a majority of this Court evolved to feel that the *Frey* Court articulated a "better" view of the *Mills* question: the point is that final decisions of issues cannot be subject to relitigation every time a court somewhere renders a decision which may be helpful to the defendant. Accordingly, even if this Court were inclined to reconsider its view of *Mills* in an appropriate case, this case would not be the appropriate vehicle to do so because, as the Majority states, appellant's *Mills* claim has already been finally litigated.

The PCRA's rational limitation upon relitigation is particularly salutary in matters raising *Mills* procedural questions.

As the Majority notes, the U.S. Supreme Court recently held, in a capital case arising from Pennsylvania, that *Mills* established a new constitutional rule and therefore it is not subject to retroactive application. *See Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 2508, 2515, 159 L.Ed.2d 494 (2004).[2] Since *Mills* itself is not subject to retroactive application, the Third Circuit's non-binding interpretation of *Mills* in *Frey* certainly cannot be permitted to have the super-retroactive effect of defeating the PCRA's previous litigation bar. The persuasiveness or non-persuasiveness of *Frey* is irrelevant to the previous litigation question before the Court: the *Frey*-based argument fails because it cannot, as a matter of law, defeat the statutory previous litigation bar.[3]

Second, I do not join in footnote 20 of the Majority Opinion, which suggests certain points a trial court should address with

**2.** The Supreme Court's holding on *Mills* retroactivity proves the error inherent in this Court's former relaxed waiver practice, to the extent that relaxed waiver permitted entirely new procedural rules of constitutional dimension in capital cases, which were not themselves entitled to retroactive application, to operate retroactively in trials in which the relevant objection was never timely raised. *See Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 395–96 (2003). Such is apparently what occurred in this case, as this Court entertained a waived *Mills* claim on direct review. In my view, the Supreme Court having definitively rejected the retroactive application of *Mills*, that case cannot fairly form the basis for any successful collateral attack—whether previously litigated or not—upon a conviction secured before the case was decided, where the defendant did not raise the *Mills* objection at trial. Thus, even if the previous litigation bar did not exist, for purposes of PCRA review, I would not indulge the fiction that appellant preserved a *Mills* objection at trial, when he clearly did not.

**3.** It bears noting that the question of whether the Pennsylvania standard charge would pass muster under *Mills* was briefed before the U.S. Supreme Court in *Beard v. Banks*, but was not reached given the Court's finding that *Mills* is not subject to retroactive application. In its brief in *Beard v. Banks* (which is available online via the U.S. Supreme Court's website), the Commonwealth argued that the Third Circuit had "flip-flopped" in its view of the reasonableness of this Court's interpretation of *Mills*, shifting from a view that our interpretation was "plausible" to a conclusion that it was objectively unreasonable only after the federal habeas review standard changed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA significantly altered the federal habeas corpus review paradigm by requiring federal courts to defer to reasonable state court interpretations of clearly established U.S. Supreme Court precedent.

the defendant before he may waive the right to present mitigation evidence at capital trials. The Majority correctly notes in a footnote that a footnote in this Court's decision in *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334, 340 n. 1 (1987) directed that trial judges in such an instance conduct a colloquy to determine two points: (1) whether it is the defendant himself who is making the decision not to present mitigation evidence; and (2) that the defendant is aware that the verdict must be a sentence of death if the jury finds at least one aggravating circumstance and no mitigating circumstances. The Majority expands upon the procedural rule found in the *Crawley* footnote, as it directs that "a trial court should conduct an on-the-record colloquy informing [the defendant] of the right to present such proof, its importance, and, after ensuring that he understands the importance and the risks associated with a waiver, whether he wishes to forego the presentation of mitigating evidence." Slip op. at 934–35 n. 20. Respectfully, I think that the question of whether or when the trial court should be deemed obliged to conduct such a colloquy *sua sponte*, as well as the question of the specific contours of the inquiry, should be reached only in a case actually posing such issues with adversarial presentations; or failing that, in connection with the more thorough evaluation which would be available in the formal rule-making arena. In my view, referring the question to the Criminal Procedural Rules Committee is a far more preferable course than adopting and refining such rules of procedure on an *ad hoc* basis in footnotes in capital cases.[4] Proceeding by way of formal rulemaking would allow this Court to issue a single, easily-found pronouncement addressing the specific contours of the rule, including the required areas of inquiry, the consequences of a failure to so inquire, and most importantly, the effective date upon which the new procedural rule would be deemed

---

4. I note that the footnote in *Crawley* apparently has been honored in the breach more than in the observance. It would appear that the footnote in question has had little effect in capital litigation since its original promulgation in 1987; the lack of effect may have resulted from its obscure origins.

operable in Pennsylvania trials. Accordingly, I would refer this question to the Criminal Procedural Rules Committee.

With the exception of the above concerns, I join the Majority Opinion.

Justice NIGRO, concurring.

I agree with the majority that the PCRA court's order denying Appellant post-conviction relief should be affirmed. I write separately, however, to note my serious concern with the prosecutor's failure to disclose Edward Jackson's *crimen falsi* conviction to Appellant when, as the majority notes, a record reflecting that conviction was in the prosecutor's *own file.* Given this Court's clear pronouncement that the prosecutor's *Brady* obligation extends to exculpatory evidence contained in the files of police agencies, *see Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136, 1142 (2001), there can be no doubt that *Brady* also requires the prosecutor to disclose such evidence in her own files. Of course, knowing what documents must be disclosed is necessarily predicated on knowing what is in one's file in the first instance, and it is therefore disconcerting that the prosecutor in this capital case was unfamiliar with the contents of her own file.

That said, I agree with the majority that the Court is unable to decide whether the prosecutor's failure to disclose Jackson's conviction ultimately violated *Brady* here, as Appellant failed to include this issue in his PCRA petition and it is therefore not properly before the Court.